IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN A. HART | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RONALD NARDALILLO, WARDEN, ET AL. | : | NO. 06-0160 |

Norma L. Shapiro, S.J.                                          January 19, 2007

**MEMORANDUM & ORDER**

Petitioner John A. Hart has filed a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. United States Magistrate Judge Carol Sandra Moore Wells entered a Report and Recommendation ("R&R") recommending that the petition be denied. Petitioner filed timely objections to this R&R. For the reasons discussed in this Memorandum, the R&R is approved as modified by this Memorandum, and the petition is denied.

**I.      Background and Procedural History**

Petitioner was arrested four times between August 21, 2002 and September 12, 2002 on charges of stalking and terroristic threats involving Amanda Smothers. He pleaded *nolo contendere* to these charges on May 12, 2003 and was sentenced to time served plus a two-year probation period during which he was to have no contact with Ms. Smothers.

Three weeks later, Petitioner was arrested on charges of harassing another woman, Courtney Davis, and he was placed in Delaware County Prison. On June 4, 2003, while in custody on the Davis charges, Petitioner was served with two additional warrants for allegedly contacting Ms. Smothers by telephone on May 31, 2003, a violation of his earlier probation terms.

One warrant charged Petitioner with harassment by communication; the other charged him with indirect criminal contempt.

On June 10, 2003, a Delaware County Adult Probation Officer requested two detainers be lodged against Petitioner based upon the criminal charges filed by Ms. Davis.  In addition, the prosecutor requested an additional detainer be lodged against him for violating a condition of his probation.

On August 5, 2003, a preliminary hearing was held on the charges arising from the alleged telephone calls to Ms. Smothers.  After a hearing, the Magisterial District Court determined that the Commonwealth had not sustained its burden and dismissed the harassment by communication charge.  On October 16, 2003, Petitioner appeared in the Delaware County Court of Common Pleas to defend the indirect criminal contempt violation arising from Ms. Smothers' allegations.  Prior to the hearing, the Commonwealth withdrew all remaining charges against Petitioner arising from Ms. Smothers' allegations.

On June 26, 2003, a preliminary hearing was held on the charges involving the allegations made by Courtney Davis.  Following a three-day jury trial in the Delaware County Court of Common Pleas, Petitioner was acquitted of all charges involving Ms. Davis.

On December 17, 2003, Petitioner filed a habeas corpus petition in Pennsylvania state court in which he sought to have his detainers lifted.  A hearing on the petition was held on December 22, 2003, and the Commonwealth presented notice of its intent to proceed with a Gagnon II[1] hearing based upon a technical violation of the terms of Petitioner's probation for the alleged contacts with Ms. Smothers on May 31, 2003.  The trial court dismissed Petitioner's

---

[1] Gagnon v. Scarpelli, 411 U.S. 778 (1973).

habeas petition and scheduled a Gagnon II hearing for February 9, 2004.

At the February 9, 2004 Gagnon II hearing, at which Petitioner was represented by counsel, Petitioner stipulated to receiving notice of the violation on December 22, 2003.  After the presentation of evidence, pursuant to an agreement with the Commonwealth, Petitioner also stipulated to a technical violation of his probation.  The Common Pleas Court revoked Petitioner's parole, re-sentenced him to serve his full back time with immediate parole and ordered him to have no contact with Amanda Smothers.

Petitioner filed a timely appeal to the Pennsylvania Superior Court and asserted prejudice from the lower court's failure to hold a Gagnon I  hearing and its delay in holding a Gagnon II hearing.  On May 16, 2005, the Superior Court affirmed the revocation and the sentence. Commonwealth v. Hart, No. 1426 EDA 2004 (Pa. Super. May 16, 2005), slip op. at p. 8.

The Superior Court addressed two issues.   First, Petitioner challenged the delay in holding the Gagnon II hearing.  The Superior Court found the six-month delay, while not a *per se* violation of the Pennsylvania speedy hearing requirements,[2] mandated "scrutiny of the other attendant circumstances."  Comm. v. Hart, slip op. at 6.  The reason proffered by the Commonwealth for the delay, a decision to await the outcome of the Davis criminal charges, was deemed insufficient.  Notwithstanding the unjustified delay, the Superior Court found Petitioner had not satisfied the prejudice requirement set forth in Commonwealth v. Clark, 847 A.2d 122, 124 (Pa.Super. 2004).  The Court reasoned that Petitioner's stipulation to the technical violation

---

[2] Under the Pennsylvania Rules of Criminal Procedure, revocation hearings must be held "as speedily as possible" after the Commonwealth becomes aware of an alleged violation. Pa.R.Crim.P. 708(B)(1), 42 Pa.Cons.Stat.Ann.  Whether a hearing was held "as speedily as possible" requires an examination of three factors: (1) length of delay; (2) reason for the delay; and (3) prejudice to defendant.  Commonwealth v. Clark, 847 A.2d 122 (Pa.Super. 2004).

undermined his claim of prejudice. Comm. v. Hart, slip op. at 7.

Similarly, the Superior Court rejected Petitioner's argument that he had been prejudiced by the failure to hold a Gagnon I hearing. It held that Petitioner had stipulated to the notice of the violation as well as its occurrence, and any error had been harmless.

The Pennsylvania Supreme Court denied a petition for allocatur on August 22, 2005. See Pet. at 5; Ans. at 1.

Petitioner filed this action for federal habeas relief and asserted two claims: 1) denial of due process by the failure to conduct a Gagnon I hearing and the delay in conducting the Gagnon II hearing; and 2) denial of due process by the denial of his application for state habeas corpus relief. Pet. at 9; Memorandum of Law in Support of Petition for Writ of Habeas Corpus at 5-11 ("Pet. Mem").

## II. Report and Recommendation

The Magistrate Judge issued a R&R, which recommended that the petition be denied. Ground One was denied on the merits. The Magistrate Judge concluded that "[s]ince Petitioner admitted to the probation/parole violation and does not contend that such a violation would not constitute an appropriate ground to revoke his probation and parole under state law, Petitioner was afforded all the process due him." R&R at 10, citing Morrissey v. Brewer, 408 U.S. 471, 490 (1972). Ground Two was denied on the merits even though the claim was deemed unexhausted. R&R at p. 4.

## III. Petitioner's Objections

Petitioner objects to certain factual characterizations set forth in the R&R. In particular, the Magistrate Judge stated that Petitioner pled guilty to the crime involving Courtney Davis,

which Petitioner claims is not the case. Petitioner claims the factual inaccuracies "unfairly taint the report [and] deflec[t] from the denial of due process involved." Pet.'s Obj. at 1.

Petitioner also objects to the Magistrate Judge's recommendation regarding Claim One. Petitioner contends the Magistrate Judge ignored the prejudice caused by not holding a Gagnon I hearing and the delay in holding the Gagnon II hearing. He claims that the Magistrate Judge disregarded the evidence produced at the Gagnon II hearing and failed to address his claim that he was unlawfully induced into stipulating to the violations. Pet.Obj. at 2-4.

### III.  Standard of Review

A district court reviews *de novo* those portions of a magistrate judge's report and recommendation to which objection is made. See 28 U.S.C. § 636(b)(1)(C).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a writ of habeas corpus for a person serving a state court sentence shall not be granted unless the state court adjudication, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision "will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A federal habeas court cannot grant a writ of habeas corpus under 28 U.S.C. § 2254(d)(1) just because the court independently concludes that the state court applied federal law erroneously or incorrectly; the application of federal law must be unreasonable for the writ to be granted. Id. at 411. The state court's application of federal law is unreasonable if: (1) "the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state

prisoner's case"; or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407.

**IV. Discussion**

A. Objections to Factual Allegations in R&R

Petitioner's first objection to the R&R is a contention that the Magistrate misstated certain facts. The Magistrate's R&R stated, "Petitioner pled *nolo contendere* to charges of stalking and terroristic threats against Amanda Smothers and pled guilty to harassing Courtney Davis." R&R at 1. The record supports Petitioner's assertion that he was acquitted of all charges involving Courtney Davis. See Comm. v. Hart, slip op. at 2. The R&R also states, "On May 31, 2003, Ms. Smothers received a harassing phone call; Petitioner was arrested for this offense on June 3, 2003." In fact, Petitioner was already in custody on June 3, 2003 for the charges filed by Ms. Davis; he received the two warrants for the calls to Smothers while he was being held in prison for the Davis charges. See Comm. v. Hart, slip op. at 1.

Thus, the record supports Petitioner's objection that there are factual inaccuracies in the R&R. It does not necessarily follow, as Petitioner alleges, that these factual errors "unfairly taint the report and deflec[t] from the denial of due process involved." Pet. Obj. at 1.

B. Claim One

Petitioner claims a denial of due process by the failure to conduct a Gagnon I hearing and the delay in conducting the Gagnon II hearing. A parolee is generally entitled to certain minimal due process protections because of the possible deprivation of liberty inherent in parole revocation proceedings. Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Gagnon v Scarpelli, 411 U.S. 778

(1973) extended the Morrissey holding to probation revocation proceedings.[3]  See also Commonwealth v. Davis, 336 A.2d 616 (Pa. Super. 1975) (implementing the two-step revocation procedure of Gagnon and Morrissey).  When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a Gagnon I hearing, that probable cause exists to believe that a violation has been committed.  See Commonwealth v. Ferguson, 761 A. 2d 613, 617 (Pa. Super. 2000).  Where a finding of probable clause is made, a second, more comprehensive Gagnon II hearing is required before a final revocation decision is made.  Id.

     A parole or probation revocation proceeding is not the due process equivalent of a criminal trial.  Morrissey, 408 U.S. at 480.  Parole is a variation on imprisonment of convicted criminals.  Id. at 477.  "[T]he State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.  The State thus has an 'overwhelming interest' in ensuring that a parolee complies with those requirements and is returned to prison if he fails to do so."  Pa. Bd. of Prob. and Parole v. Scott, 524 U.S. 357, 365 (1998).  "[P]arole revocation deprives the parolee not 'of the absolute liberty' to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions..."  Id.  at 366.

     Parolees and probationers are not entitled to "the full panoply" of due process rights to which a criminal defendant is entitled.  Morrissey, 408 U.S. at 480.  For instance, "although violations of parole often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury

---

[3]"[R]evocation of probation where sentence has been imposed is constitutionally indistinguishable from the revocation of parole."  Gagnon, 411 U.S. at 782, n.3.  Accordingly, parole and probation are used interchangeably in this discussion.

beyond a reasonable doubt." United States v. Dees, 467 F.3d 847, 854 (3d Cir. 2006), quoting Johnson v. United States, 529 U.S. 694, 700 (2000) (discussing federal revocation proceedings). The purpose of a revocation proceeding is not to determine whether the parolee is guilty of any crime, but to determine whether the parolee has complied with the conditions of his parole. Rivenbark v. Pa. Bd. of Prob. & Parole, 509 Pa. 248, 501 A.2d 1110 (1985).  Defendants in such proceedings face a greater range of evidence that may be admissible against them, no right to a jury, and no right against self-incrimination.  United States v. Loy, 237 F.3d 251 (3d Cir. 2001) (citations omitted).  The exclusionary rule does not apply to such proceedings.  Pa. Bd. v. Scott, at 369.  A separate written memorandum of reasons for the revocation is not required.  United States v. Barnhart, 980 F. 2d 219, 233, n.3 (3d Cir. 1992); see also United States v. Pinckney, No. 05-3959, 2007 WL 13841 at *3 (3d Cir. Jan. 3, 2007) (non-precedential).

　　　　Petitioner contends he was prejudiced by the Commonwealth's delay in holding the Gagnon II hearing.  He argues that certain witnesses who might have been available to testify in his defense were "lost" during the interim delay period.  Pet.Brief at 8.  He does not explain how these witnesses, his mother and his uncle, were "lost" during that time or why they would be unable to recall an alibi for that period of time.

　　　　Petitioner also claims the Common Pleas Court induced him to stipulate to notice and the technical violation by threatening to re-sentence him to the remainder of time served in a state correctional institution.  He essentially asks the court to ignore his stipulation to both the notice and the violation.  But these stipulations were reached in open court, made after the Common Pleas Court heard the Gagnon II testimony.  Petitioner was represented by counsel and affirmed to

the court that he understood his sentence. Test. of 2/9/04 Hearing, Pa.C.C.P. CR No. 685-03, 4696-02, 5645-02, Ans. Exhibit C at 70.

Petitioner has not claimed his counsel was ineffective or that he did not understand the stipulation. It seems he understood that he was compromising in order to avoid a finding of violation by the judge, with the potential consequence of mandated incarceration in a state correctional facility. Pet. Obj. At 3. He seeks to retain the benefit of that bargain by stipulating to the violation but challenging the due process rights provided to him.

The Pennsylvania Superior Court expressed dismay at the delay in holding the Gagnon II hearing but found the error had been harmless because Petitioner had stipulated to the violation. The Magistrate Judge correctly concluded the Superior Court's adjudication of the claim was not contrary to nor an unreasonable application of Supreme Court precedent. There is no due process violation if a petitioner admits a parole violation and that violation is found to be reasonable grounds for revoking parole under state standards. Morrissey v. Brewer, 408 U.S at 490.[4] Here, Petitioner stipulated to the violation, contact with Amanda Smothers, and that violation would be reasonable grounds for revoking parole under Pennsylvania law.

C. Claim Two.

Petitioner's objections did not address his second claim, that he was denied due process when the state court denied his petition for a state writ of habeas corpus. The Magistrate Judge concluded that Petitioner had not exhausted all state remedies with respect to Claim Two based on

---

[4] Cf. Washington v. Sobina, No. 05-4599 (3d Cir. Jan. 11, 2007) (per curiam) (right to speedy trial is non-jurisdictional and may be waived by guilty plea).

Petitioner's own admission, Pet. at 10, but denied the claim on the merits in accordance with 28 U.S.C. §2254(b)(2).  There being no objection from Petitioner, this decision will be adopted.[5]

### VI. Conclusion

The Magistrate Judge's decision to deny the writ of habeas corpus was correct. Accordingly, the R&R will be approved and adopted, as modified by this memorandum.

As no reasonable jurist would debate the court's disposition of Petitioner's claims, a certificate of appealability should not issue.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000); Lambert v. Blackwell, 387 F.3d 210, 230 (3d Cir. 2004).  An appropriate order will issue.

                                                                                   S.J.

---

[5]Claim Two is not only unexhausted, it is procedurally defaulted, because the time for filing an appeal or a petition for post-conviction relief has long since expired.  See 42 Pa.C.S. §9545.  Accordingly, this unexhausted claim did not create a "mixed petition" requiring dismissal under Rose v. Lundy, 455 U.S. 509, 522 (1982).  See Slutzker v. Johnson, 393 F.3d 373, 380 (3d Cir. 2004); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  The state habeas petition was dismissed when the Gagnon II hearing was scheduled, so the grounds for objecting to this dismissal are the same procedural objections raised in Claim One.  As such, Claim Two is redundant to Claim One, and its dismissal on the merits is appropriate.  See 28 U.S.C. §2254(b)(2); cf. Rhines v. Weber, 544 U.S. 269, 277 (2005) ("district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless.").

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN A. HART | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RONALD NARDALILLO, WARDEN, ET AL. | : | NO. 06-0160 |

## ORDER

     **AND NOW**, this 19th day of January, 2007, upon consideration of Magistrate Judge Wells' Report and Recommendation, petitioner's objections thereto, and all other relevant papers, for the reasons set forth in the accompanying memorandum, it is **ORDERED**:

     1. The Report and Recommendation (Paper #6) is **APPROVED, except as modified by the accompanying memorandum**.

     2. All objections filed by petitioner (Paper #7) are **OVERRULED**.

     3. The Petition for Writ of Habeas Corpus (Paper #1) is **DENIED and DISMISSED** with prejudice.

     4. Because Petitioner has failed to make a substantial showing of the denial of a Constitutional right, there is no basis for issuing a certificate of appealability.

     /s/ Norma L. Shapiro
     S.J.